UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RYAN BERRIS,<br><br>*Plaintiff,*<br><br>v.<br><br>SUNG-FUNG CHOI (A/K/A NORMAN CHOI), DE TOMASO AUTOMOBILI HOLDING N.A. LLC, HIN WENG LUI (A/K/A SAMUEL LUI), GENESIS UNICORN CAPITAL CORP.,<br><br>*Defendants.* | Case No. 1:23-cv-04305 (AS)<br><br>**Oral Argument Requested** |

**MEMORANDUM OF LAW IN OPPOSITION
TO GENESIS UNICORN CAPITAL CORP.'S
MOTION TO DISMISS THE COMPLAINT**

# **TABLE OF CONTENTS**

**TABLE OF AUTHORITIES** ........................................................................................................ 2

**INTRODUCTION** ........................................................................................................................ 4

**LEGAL STANDARD** ................................................................................................................. 4

**ARGUMENT** ............................................................................................................................... 5

    **I.**    **Genesis's Merger Argument Is Foreclosed by Rule 25(c)** ............................................. 5

    **II.**    **Plaintiff States Claims for Tortious Interference** ......................................................... 8

        **A.**    **Tortious Interference with Contract** ........................................................................ 8

        **B.**    **Tortious Interference with Economic Advantage** ................................................... 11

**CONCLUSION** ........................................................................................................................... 13

# TABLE OF AUTHORITIES

.

**Page(s)**

**Cases**

*360 Mortg. Grp., LLC v. Fortress Inv. Grp. LLC*,
2022 WL 4086829 (S.D.N.Y. Sept. 6, 2022) ............................................................................. 8

*434 Suffolk Avenue Realty, Inc. v. Incorporated Village of Islandia*,
34 Misc. 3d 1241(A), 2012 WL 934314 (Sup. Ct., Suffolk Cnty. 2012) .................................. 8

*AIM Int'l Trading, L.L.C. v. Valcucine S.p.A.*,
2003 WL 21203503 (S.D.N.Y. May 22, 2003) ................................................................ 5, 8, 9

*Am. Diamond Exch., Inc. v. Alpert*,
920 A.2d 357 (Conn. App. 2007) ............................................................................................. 9

*Arnold Graphics Indus., Inc. v. Indep. Agent Ctr., Inc.*,
775 F.2d 38 (2d Cir. 1985) ....................................................................................................... 2

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................................................. 1

*Austin v. Town of Farmington*,
826 F.3d 622 (2d Cir. 2016) ..................................................................................................... 2

*Batty v. UCAR Int'l Inc.*,
2019 WL 1489082 (Del. Ch. Apr. 3, 2019) ............................................................................. 4

*Beals v. Washington Int'l, Inc.*,
386 A.2d 1156 (Del. Ch. 1978) ................................................................................................ 4

*Bruce Bzura, LLC v. Moss*,
2018 WL 7858772 (S.D.N.Y. Oct. 25, 2018) .................................................................... 7, 10

*Charming Beats, LLC v. Hypebeast, Inc.*,
2023 WL 5432294 (S.D.N.Y. Aug. 23, 2023) ..................................................................... 1, 2

*Chevron Corp. v. Salazar*,
807 F. Supp. 2d 189 (S.D.N.Y. 2011) ...................................................................................... 4

*Cortec Indus., Inc. v. Sum Holding L.P.*,
949 F.2d 42 (2d Cir. 1991) ....................................................................................................... 3

*Cruz v. Zucker*,
116 F. Supp. 3d 334 (S.D.N.Y. 2015) .................................................................................. 4, 5

*Damon Alarm Corp. v. Am. Dist. Tel. Co.*,
304 F. Supp. 83 (S.D.N.Y. 1969) ............................................................................................. 4

*G-I Holdings, Inc. v. Baron & Budd*,
    238 F. Supp. 2d 521 (S.D.N.Y. 2002) ........................................................................... 8

*Goel v. Bunge, Ltd.*,
    820 F.3d 554 (2d Cir. 2016) ......................................................................................... 2

*In re MF Glob. Holdings Ltd. Inv. Litig.*,
    611 F. App'x 34 (2d Cir. 2015) .................................................................................... 8

*In re MF Glob. Holdings Ltd. Inv. Litig.*,
    998 F. Supp. 2d 157 (S.D.N.Y. 2014) .......................................................................... 8

*Luxliner P.L. Exp., Co. v. RDI/Luxliner, Inc.*,
    13 F.3d 69 (3d Cir. 1993) ............................................................................................. 2

*Rossman v. Morasco*,
    115 Conn. App. 234 (2009) .......................................................................................... 5

*See v. Gov't Emps. Ins. Co.*,
    2023 WL 2731697 (E.D.N.Y. Mar. 30, 2023) .............................................................. 5

*Sevits v. McKiernan-Terry Corp. (N. J.)*,
    264 F. Supp. 810 (S.D.N.Y. 1966) ........................................................................... 3, 4

*Thornton Tomasetti, Inc. v. Anguillan Dev. Corp.*,
    2015 WL 7078656 (S.D.N.Y. Nov. 13, 2015) ............................................................. 4

**Rules**

Fed. R. Civ. P. 11(b)(2) ........................................................................................................ 4

Fed. R. Civ. P. 25(c) ....................................................................................................... 2, 3

Fed. R. Civ. P. 8(e)(2) .......................................................................................................... 8

Fed. R. Civ. P. 9(b) ......................................................................................................... 6, 9

**Other Authorities**

4F N.Y. Practice - Commercial Litigation in New York State Courts § 131:49 (5th ed. 2021) ..... 6

6 Moore's Federal Practice - Civil § 25.31 (2023) ............................................................. 2

7C Charles C. Wright, Arthur R. Miller & Mary Kay Kane,
    Federal Practice & Procedure § 1958 (3d ed. 2023) ............................................... 2, 3

N.Y. Pattern Jury Instruction - Civil 3:57 ........................................................................... 9

Restatement (Second) of Torts § 766B (1979) .................................................................... 9

Restatement (Third) of Torts: Liab. for Econ. Harm § 18 (2020) ....................................... 9

## INTRODUCTION

The Complaint alleges a straightforward scheme by Defendant Genesis Unicorn Capital Corp. ("Genesis"), acting by and through its President, Defendant Hin Weng ("Samuel") Lui,[1] to enter into a fraudulent SPAC transaction with Defendant De Tomaso Automobili Holding N.A. ("De Tomaso") at the urging of Defendant Norman Choi. As alleged in the Complaint, when Plaintiff Berris eventually learned of this attempted market manipulation and began to express concerns, Genesis and Lui forced Berris out of De Tomaso and deprived him of the remuneration and equity he was owed for his years of work building the company, almost none of which had been paid out to him.

Lacking any credible arguments that Plaintiff has not properly alleged its claims against Genesis and Lui in the Complaint, Genesis instead seeks to avoid liability by brazenly claiming that the Federal Rules of Civil Procedure mandate its dismissal purportedly because—*over two months after it was sued and served with valid process*—Genesis subsequently merged into a new corporate entity. That flies in the face of what the Federal Rules actually state. As explained below, Rule 25(c) clearly and expressly covers this exact situation and unambiguously permits a case to proceed against the original party, with any judgment binding against its successor in interest. Because both its procedural and merits-based arguments fail, Genesis's motion should be denied.

## LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim, "a complaint must include sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Charming Beats, LLC v. Hypebeast, Inc.*, 2023 WL 5432294, at *1 (S.D.N.Y. Aug. 23, 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).[2] "In reviewing a motion to dismiss, the

---

[1] Defendant Lui was served with process on August 24, 2023, after his attorneys refused to accept service on his behalf. His response to the Complaint will be due on September 28, 2023.
[2] Unless otherwise indicated, all quotations, citations, brackets, and alterations are omitted; all emphases are added.

4

Court accepts all factual allegations as true, and draws all reasonable inferences in the plaintiff's favor." *Id.* (quoting *Austin v. Town of Farmington*, 826 F.3d 622, 625 (2d Cir. 2016)).

On a motion to dismiss for failure to state a claim, "the Court may review only a narrow universe of materials," including "facts stated on the face of the complaint, documents appended to the complaint or incorporated in the complaint by reference, and matters of which judicial notice may be taken." *Id.* (quoting *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016)).

## ARGUMENT

### I. Genesis's Merger Argument Is Foreclosed by Rule 25(c)

Genesis's argument that the suit against it cannot continue because it merged with another company after it was properly served is squarely foreclosed by the express language of Federal Rule of Civil Procedure 25(c). Rule 25(c) provides that "[i]f an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party." Fed. R. Civ. P. 25(c). The effect of a transfer of interest that occurs after a company is made a party to a lawsuit is governed by Rule 25(c), and not, as Genesis mistakenly asserts, Rules 9 and 17. *See Arnold Graphics Indus., Inc. v. Indep. Agent Ctr., Inc.*, 775 F.2d 38, 43 (2d Cir. 1985) (Rule 25(c) applicable to all corporate mergers, including de facto mergers); *Luxliner P.L. Exp., Co. v. RDI/Luxliner, Inc.*, 13 F.3d 69, 71 (3d Cir. 1993) ("A 'transfer of interest' in a corporate context occurs when one corporation becomes the successor to another by merger or other acquisition of the interest the original corporate party had in the lawsuit."); *see also* 7C Charles C. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1958 (3d ed. 2023) ("After suit is brought, Rule 25(c) becomes the relevant provision. The rule applies to ordinary transfers and assignments, as well as to corporate mergers."); 6 Moore's Federal Practice - Civil § 25.31 (2023).

Genesis existed as a separate entity at the time it was made a party to this lawsuit through service on its registered agent on June 1, 2023, over two months prior to the merger that purportedly deprived it of its ability to be sued. (*See* ECF No. 19; Colbath Decl., Ex. A). Defendant does not contest the validity of that service and has thus waived any argument that such

5

service was ineffective. Indeed, Genesis even disclosed that it was a party to this suit to its shareholders through its Schedule 14A form filed with the SEC. (Simons Decl., Ex. A at 97 ("On May 24, 2023, a complaint was filed in the United States District Court for the Southern District of New York by Ryan Berris against De Tomaso Automobili Holdings N.A. LLC ("DT"), DT's owner Sung-Fung "Norman" Choi ("Choi"), GUCC and Samuel Lui.")); *see Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) ("public documents required by law to be and which actually have been filed with the SEC" are properly objects of judicial notice). And the merger agreement, as filed with the SEC, provided that "all the property, rights, privileges, agreements, powers and franchises, debts, liabilities, duties and obligations of Parent and Purchaser prior to the Redomestication Merger Effective Time shall become the property, rights, privileges, agreements, powers and franchises, debts, liabilities, duties and obligations of the Redomestication Merger Surviving Corporation," (Simons Decl., Ex. A at A-19), confirming that this is a "transfer of interest" governed by Rule 25(c).

The merger of an existing party to a lawsuit that results in a transfer of interest cannot warrant dismissal and does not necessitate amendment or substitution. Fed R. Civ. P. 25(c). Indeed, "[t]he most significant feature of Rule 25(c) is that it does not require that anything be done after an interest has been transferred. The action may be continued by or against the original party, and the judgment will be binding on the successor in interest even though the successor is not named." 7C Charles C. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1958. To the extent that Genesis's motion can be read to contend that its successor in interest, ESGL Holdings Limited, should be made a party to this lawsuit for the more efficient prosecution of Plaintiff's claims against Genesis and its former President and CFO, Samuel Lui, Plaintiff does not oppose such a request.

The cases cited by Genesis do not support its meritless contention. In every case, the defendant dismissed had merged (and thus ceased to exist) *before* service was attempted. *See Sevits v. McKiernan-Terry Corp. (N. J.)*, 264 F. Supp. 810, 811-12 (S.D.N.Y. 1966) (two corporate defendants had merged into a third by time lawsuit was filed; claims permitted against their

successor in interest); *Thornton Tomasetti, Inc. v. Anguillan Dev. Corp.*, 2015 WL 7078656, at *1 (S.D.N.Y. Nov. 13, 2015) (claims filed in 2014 against company that merged with another company in 1993; amendment to include successor in interest considered but deemed futile); *Beals v. Washington Int'l, Inc.*, 386 A.2d 1156, 1160 (Del. Ch. 1978) (claims filed against predecessor and successor companies after merger became effective; claims permitted to proceed against successor company); *Damon Alarm Corp. v. Am. Dist. Tel. Co.*, 304 F. Supp. 83, 84 (S.D.N.Y. 1969) (service effected on predecessor company after merger became legally effective); *Batty v. UCAR Int'l Inc.*, 2019 WL 1489082, at *6 (Del. Ch. Apr. 3, 2019) (claims filed in 2018 against company that had merged with another defendant in 2010). Notably, in multiple cases cited by Genesis, claims were permitted against successors in interest. *See Sevits*, 264 F. Supp. at 811-12, n.1 & 814-15 (claims permitted against successor in interest); *Batty*, 2019 WL 1489082, at *6, *10; *Beals*, 386 A.2d at 1160 (permitting claims against successor company to proceed and expressing puzzlement as to why successor corporation, "liable for all the debts, liabilities and duties" of its predecessor, would bother seeking to quash service).[3]

In short, Rule 25(c) squarely forecloses Genesis's argument that its August 2, 2023, merger necessitates dismissal. That argument fails to clear the low bar set by Federal Rule of Civil Procedure 11(b)(2) and cannot support dismissal. Further, Genesis's merger argument is the *sole* support for its conclusory suggestion that it—despite the merger occurring *after* service—"could not be properly served with process" and "is not subject to personal jurisdiction." (Mot. at 6). In failing to develop these arguments in any way, Genesis has waived them. *See Cruz v. Zucker*, 116 F. Supp. 3d 334, 349 n.10 (S.D.N.Y. 2015) ("Because these arguments were not raised in his opening brief, they were waived.").

---

[3] A final case cited by Genesis, *Chevron Corp. v. Salazar*, 807 F. Supp. 2d 189 (S.D.N.Y. 2011), which considers the effect of a corporate merger on judicial estoppel doctrines, is irrelevant to the issue here.

7

## II. Plaintiff States Claims for Tortious Interference

The facts supporting Berris's tortious interference claim are clearly alleged in the complaint. Genesis, a SPAC in which Mr. Choi held an ownership interest, (*see* Cmpl. ¶¶ 87, 93) and which had gone through contortions to paper over the clearly illegal pre-identification of De Tomaso as a potential target, (Cmpl. ¶¶ 85, 88-92), was engaged in fabricated "arm's length" diligence of De Tomaso, (Cmpl. ¶¶ 199, 208).  Berris was De Tomaso's CEO and day-to-day manager, (Cmpl. ¶¶ 46, 134, 155, 163) from which any rational business actor could infer an agreement that he would be compensated for his work.  As Berris raised concerns about the potential transaction, (Cmpl. ¶¶ 87, 173, 193), and as it became clear that Berris's equity stake would need to be compensated or accounted for in any ultimate transaction, (*see* Cmpl. ¶¶ 198, 207), Samuel Lui, Genesis's President and CFO, who held *no role* at De Tomaso, facilitated Berris's discharge, including by using threats, (Cmpl. ¶¶ 124, 199, 208).  Under these facts, Berris plainly has plausibly alleged that Genesis, through its President Lui, did intentionally and improperly interfere with Berris's contractual and business relationships with the De Tomaso defendants.

Notably, Genesis does not argue that there are not sufficient allegations from which to conclude that Lui, Genesis's President and CFO, "was acting as an agent of Genesis" and therefore exposing Genesis to liability for its actions.  Indeed, it cannot.  (Cmpl. ¶ 209); *see See v. Gov't Emps. Ins. Co.*, 2023 WL 2731697, at *11 (E.D.N.Y. Mar. 30, 2023) ("at the motion to dismiss stage, a plaintiff need only raise a sufficient inference that some sort of agency relationship existed").  And it has waived any argument to that effect.  *Cruz*, 116 F. Supp. 3d at 349 n.10.

As explained below, Plaintiff has adequately pleaded both claims against Genesis.

### A.  Tortious Interference with Contract

A complaint for tortious interference "must allege (1) the existence of a valid contract between a third party and plaintiff, (2) that defendant had knowledge of that contract, (3) that defendant intentionally procured a breach, and (4) damages." *AIM Int'l Trading, L.L.C. v. Valcucine S.p.A.*, 2003 WL 21203503, at *4 (S.D.N.Y. May 22, 2003); *see also Rossman v.*

*Morasco*, 115 Conn. App. 234, 244 (2009).  Genesis does not contest the sufficiency of the allegations supporting the first or fourth elements.

With respect to the second element, the defendant's knowledge of the contract, it is black-letter law that "knowledge[] and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).  As Genesis concedes, "Berris alleges that he 'had a contract for employment with Defendant De Tomaso'" (Mot. at 6 (quoting Cmpl. ¶196)), and that he also "alleges that 'Lui and Genesis were aware of this contractual agreement,'" (Mot. at 6 (quoting Cmpl. ¶ 197)).  That is the end of the matter.

What is more, Genesis's knowledge of the agreement can also be reasonably inferred from the complaint's allegations.  Berris was acting as De Tomaso's CEO and day-to-day manager, (Cmpl. ¶¶ 46, 134, 155, 163), and it is more than a reasonable inference that he was doing so pursuant to contract (whether written or oral).  Moreover, because Genesis was a "SPAC purportedly conducting due diligence of De Tomaso as a possible target," (Cmpl. ¶¶ 199, 208; *see* Cmpl. ¶¶ 84, 91-92, 173), the compensation of De Tomaso's sole full-time officer who was running the business, (*e.g.*, Cmpl. ¶¶ 46, 134, 155, 163), appearing alongside its co-owner in marquee publicity events, (Cmpl. ¶ 49), and acting as the public-facing leader and spokesperson for the company, (Cmpl. ¶ 57), would be something of which it is reasonable to infer it would be aware. Genesis's suggestion that it was not aware of the employment contract between Berris and De Tomaso is not supported by common sense or context and is, at best, a purported factual denial of the allegations in the Complaint and therefore not an appropriate basis for a motion to dismiss.

Further, contrary to Genesis's suggestion that it was unaware of the precise terms of the agreement with De Tomaso, (Mot. at 6-7), intentional interference with contract does not require the defendant's knowledge of the specific terms of the agreement. *See* 4F N.Y. Practice - Commercial Litigation in New York State Courts § 131:49 (5th ed. 2021) ("To be liable for interference, the defendant need not have 'full knowledge of the detailed terms of the existing contract.'"). And in any case, as specifically alleged in the Complaint, Genesis and Choi obtained multiple valuations of the value of De Tomaso for purposes of engaging in a SPAC transaction or

9

other sale. (*See* Cmpl. ¶¶ 73-74, 77, 116). Berris held an equity stake directly affected by any sale. (Cmpl. ¶¶ 67, 196, 205). It is implausible that Genesis would be unaware of that stake after the numerous meetings held with Berris and Choi as part of its purported diligence of De Tomaso. (*See* Cmpl. ¶¶ 199, 208). Accordingly, the allegations supporting the second element are sufficiently pleaded in the Complaint.

Genesis's argument as to the third element of this claim—intentional procurement of breach—similarly misses the forest for the trees and ignores the clear allegation that "Defendants Choi, De Tomaso, Lui, and Genesis conspired with each other and acted in concert in tortiously interfering with Berris's contract with De Tomaso." (Cmpl. ¶ 201; *see* Cmpl. ¶¶ 4-6, 107). As Genesis correctly identifies, (Mot. at 1-2, 7), Choi and De Tomaso breached their agreement with Berris by failing to compensate him as agreed, including denying him his equity stake as they sought to merge or otherwise sell the company. Genesis and Lui played an integral role in the ultimate denial of that compensation by effectuating Berris's discharge. (Cmpl. ¶ 209). Indeed, Lui attempted to induce Berris into signing a letter that would confirm that he had "no claim against the Company whatsoever whether in respect of fees, remuneration, benefits or compensation" and also employed threats to effectuate the same end. (Cmpl. ¶ 120; *see* Cmpl. ¶¶ 208, 119, 197-98). Given Lui's lack of any role at De Tomaso and the fact that Genesis was supposed to be acting at arm's length as a potential SPAC acquirer, (Cmpl. ¶¶ 84, 199), this conduct cannot be explained except by intentional interference—why else would Lui and Genesis involve themselves in the longstanding relationship between Berris and De Tomaso? It is thus a reasonable inference that Genesis and Lui "induced or otherwise caused" De Tomaso to breach its agreement with Berris. And in any case, the close interaction between Genesis and De Tomaso is a far cry from the situation in Genesis's sole case on this point, *Bruce Bzura, LLC v. Moss*, where "[o]n the face of the Amended Complaint," the defendants and the third party did "not interact with each other at all." 2018 WL 7858772, at *5 (S.D.N.Y. Oct. 25, 2018).

Plaintiff's claim for tortious interference with contract is sufficiently pleaded.

### B. Tortious Interference with Economic Advantage

As an initial matter, Berris's claim for tortious interference with prospective economic advantage is pleaded in the alternative to his claim for tortious interference with contract. Courts routinely permit plaintiffs to plead a claim for tortious interference with prospective economic advantage in the alternative to a claim for tortious interference. *See G-I Holdings, Inc. v. Baron & Budd*, 238 F. Supp. 2d 521, 535-36 (S.D.N.Y. 2002) ("Should the Defendants demonstrate that Holdings' contract with CCR was not fully enforceable or, assuming the validity of the contract, that there was no breach, the claim for tortious interference might fail. In those circumstances, however, the alternative claim for tortious interference with economic advantage would be viable."); *In re MF Glob. Holdings Ltd. Inv. Litig.*, 998 F. Supp. 2d 157, 187 (S.D.N.Y. 2014), *aff'd sub nom. In re MF Glob. Holdings Ltd. Inv. Litig.*, 611 F. App'x 34 (2d Cir. 2015); *360 Mortg. Grp., LLC v. Fortress Inv. Grp. LLC*, 2022 WL 4086829, at *4 (S.D.N.Y. Sept. 6, 2022); *AIM Int'l Trading*, 2003 WL 21203503, at *7 (S.D.N.Y. May 22, 2003); *see also* Fed. R. Civ. P. 8(e)(2). In such circumstances, "the business advantage claim will lie only if the contract claim does not." *MF Global*, 998 F. Supp. 2d at 187. Which one of these two claims should proceed is properly resolved beyond the pleadings stage.

The actual language of Genesis's sole case on this point—which it fails to quote and which was decided at summary judgment with the benefit of discovery—makes clear that its reasoning is limited and inapplicable here. The court in *434 Suffolk Avenue Realty, Inc. v. Incorporated Village of Islandia* reasoned that the prospective economic advantage claim "is duplicative of the prior, nonviable cause of action for tortious interference with contract *insofar as the plaintiffs allege that the Village interfered with the Omnipoint and Nextel leases*." 34 Misc. 3d 1241(A), 2012 WL 934314, at *6 (Sup. Ct., Suffolk Cnty. 2012). Genesis has not so convincingly established that the interference with business relations claim is coterminous with the interference with contract claim, and indeed, contests the existence and scope of Berris's agreement with Choi and De Tomaso. (Mot. 1-2). Both claims should proceed.

11

And Berris has adequately pleaded facts to support each element of the tort. "To state a claim for tortious interference with prospective economic advantage, a claimant must show (1) business relations with a third party; (2) defendants' interference with those business relations; (3) defendants acted with the sole purpose of harming the plaintiff or used dishonest, unfair, or improper means; and (4) injury to the relationship." *AIM Int'l Trading*, 2003 WL 21203503, at *6; *see also Am. Diamond Exch., Inc. v. Alpert*, 920 A.2d 357, 363 (Conn. App. 2007). Genesis challenges only the second and fourth elements of Berris's prospective economic advantage claim, (Mot. at 8-9), apparently conceding that Berris had a business relationship with De Tomaso and that, if there was interference at all, the means used were improper, (*see* Cmpl. at 208).

Genesis's argument that "Berris has not alleged with specificity that Genesis targeted any activity toward Choi or De Tomaso," Mot. at 8, lacks logical coherence or legal support. First, there is no requirement interference be "alleged with specificity," *see* Fed. R. Civ. P. 9(b), and the interference with Berris's relationship is clearly alleged and may also be inferred from the allegations. Prior to the SPAC negotiations between Genesis and the De Tomaso defendants, Berris had a working relationship with Choi and De Tomaso, and the relationship soured once Genesis and Lui became involved. (*See* Cmpl. ¶¶ 4-6, 107). There is no explanation, absent such interference and interaction with the De Tomaso defendants, for Lui, who held no role or title at De Tomaso and was President and CFO of a company that was supposedly conducting arm's length negotiations, to have forced Berris's resignation from the board by improper means, including threats. (Cmpl. ¶ 208). Moreover, as key players in pushing the fraudulent SPAC transaction forward, Genesis and Lui had an obvious motive to remove Berris, who opposed the SPAC and held an equity stake that complicated the transaction.

Moreover, evidence of any direct communications and inducements to action by Genesis and Lui directed towards Choi and De Tomaso is likely within those parties' possession and is properly the subject of further discovery in this case. And the tort focuses on interference with the *business relationship*. *See* Restatement (Second) of Torts § 766B (1979) (permitting claims for intentional interference with prospective relations "whether the interference consists of (a)

12

inducing or otherwise causing a third person not to enter into or continue the prospective relation *or (b) preventing the other from acquiring or continuing the prospective relation*") (emphasis added); Restatement (Third) of Torts: Liab. for Econ. Harm § 18 (2020); *see generally* N.Y. Pattern Jury Instruction - Civil 3:57.  As such, the elements of the tort are not so narrow as suggested by Genesis's selective quotation from *Bruce Bzura, LLC v. Moss*, 2018 WL 7858772.  (Mot. at 8).  And, in any event, Berris has clearly alleged that Genesis conspired with and targeted conduct toward De Tomaso and Choi to push through the fraudulent SPAC transaction and terminate Berris in furtherance of that scheme.  (*See* Cmpl. ¶¶ 107, 116, 118-20, 207, 209-10.)

Finally, Genesis's suggestion that Berris failed to allege the fourth element, tortious interference that caused an injury to the relationship, is squarely contradicted by the allegations in the complaint that Genesis, acting through Lui, worked to interfere with Berris's business relationship with De Tomaso by pushing him out of the company by means of, among other things, coercion and threats.  (*See, e.g.*, Cmpl. ¶¶ 4-6, 107, 119-120 207-211).  Genesis's arguments ignore the allegations of the complaint and, at best, are an impermissible attempt to deny the factual allegations in the complaint.

## **CONCLUSION**

Genesis's motion to dismiss should be denied.

| | |
|---|---|
| Dated:  September 12, 2023<br>        New York, New York | Respectfully submitted,<br><br>*/s/ John T. Zach*<br>John T. Zach<br>   *Lead Trial Counsel*<br>David L. Simons<br>BOIES  SCHILLER FLEXNER LLP<br>55 Hudson Yards<br>New York, NY 10001<br>(212) 446-2300<br>jzach@bsfllp.com<br>dsimons@bsfllp.com<br><br>Izaak Earnhardt<br>BOIES SCHILLER FLEXNER LLP<br>1401 New York Ave NW |

13

Washington, DC 20005
(202) 237-2727
iearnhardt@bsfllp.com

*Counsel for Plaintiff Ryan Berris*