UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RYAN BERRIS,

                Plaintiff,

-against-

SUNG-FUNG CHOI, DE TOMASO AUTOMOBILI HOLDINGS N.A. LLC, HIN WENG LUI, GENESIS UNICORN CAPITAL CORP.,

                Defendants.

23-cv-4305 (AS)

OPINION AND ORDER

---

ARUN SUBRAMANIAN, United States District Judge:

## BACKGROUND

    Ryan Berris, former CEO of luxury automobile company De Tomaso, alleges that he was pushed out of De Tomaso by its owner, Sung-Fung Choi, and Hin Weng Lui, CEO of Genesis Unicorn Capital Corporation, after Berris called Choi and Lui out for conducting a fraudulent SPAC transaction to artificially inflate De Tomaso's value. Berris sued De Tomaso, Choi, and Lui for wrongful discharge and all defendants for tortious interference with contract, among other claims. Dkt. 1. On defendants' motion to dismiss Berris's complaint, the Court dismissed the claims against Lui and Genesis. Dkt. 72. Berris amended his complaint, alleging that Lui and Genesis could be held liable for Berris's wrongful discharge on either an aiding-and-abetting or conspiracy theory. Dkt. 80 ¶¶ 173-91. Lui and Genesis again moved to dismiss Berris's claims against them. Dkt. 97. For the following reasons, the motion is DENIED in part and GRANTED in part.

## LEGAL STANDARDS

    To survive a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Melendez v. Sirius XM Radio, Inc.*, 50 F.4th 294, 298-99 (2d Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim is plausible on its face 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* at 299 (quoting *Iqbal*, 556 U.S. at 678). When evaluating whether a complaint clears this bar, the Court must "accept as true all the factual allegations in the complaint" and "draw[] all reasonable inferences in the plaintiff's favor." *Vaughn v. Phoenix House N.Y. Inc.*, 957 F.3d 141, 145 (2d Cir. 2020) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)).

# DISCUSSION

## I. Berris's implied-covenant claim is dismissed.

Berris included in his amended complaint a claim against Lui for breach of the implied covenant of good faith and fair dealing. Dkt. 80 ¶¶ 142-48. Lui complains that Berris already withdrew this claim. Dkt. 99 at 5. Berris agrees and explains that this claim was included in the amended complaint as a "typographical error." Dkt. 103 at 16. So Count II of the amended complaint is dismissed.

## II. Berris's claim for aiding and abetting or conspiring to cause Berris's wrongful discharge survives.

### A. The Court declines to make a choice-of-law determination at the motion-to-dismiss stage.

Lui and Genesis argue that New York, not Connecticut, law governs the wrongful discharge claim, given that Berris lives in and conducted "a substantial portion of his corporate duties . . . [and] the company's business" in New York. Dkt. 99 at 8. And they say that since New York law doesn't recognize the tort of wrongful discharge, the claim must be dismissed. *Id.* at 9. Notably, at the hearing on the last motion to dismiss, the other defendants in the case did not contest that Connecticut law governs this claim. Dkt. 78 at 24.

"Because a choice of law analysis is fact intensive, courts often decline to make a choice of law determination at the motion to dismiss stage." *Holborn Corp. v. Sawgrass Mut. Ins. Co.*, 304 F. Supp. 3d 392, 398 (S.D.N.Y. 2018) (citation omitted). Only when "the relevant facts are sufficiently clear" will courts engage in a choice-of-law analysis before resolving a motion to dismiss. *Id.* (citation omitted).

Here, the relevant facts are not clear. The parties agree that the Court must apply New York's choice-of-law rules. *See In re Coudert Bros. LLP*, 673 F.3d 180, 186 (2d Cir. 2012) ("When a federal district court sits in diversity, it generally applies the law of the state in which it sits, including that state's choice of law rules."). In tort cases, New York courts apply the "interest analysis" test, under which courts apply "the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation." *Schultz v. Boy Scouts of Am., Inc.*, 480 N.E.2d 679, 683 (N.Y. 1985) (citation omitted). In applying this test, courts consider "[t]he contacts of the parties and occurrences with each jurisdiction," as well as "the policies underlying each jurisdiction's rules, the strength of the governmental interests embodied in these policies, and the extent to which these interests are implicated by the contacts." *Fin. One Pub. Co. Ltd. v. Lehman Bros. Special Fin. Inc.*, 414 F.3d 325, 337 (2d Cir. 2005).

Lui and Genesis say that New York has the "greater interest" in the wrongful-discharge claim because Berris is domiciled in New York and conducted most of his work for De Tomaso in New York. Dkt. 99 at 9. Berris counters that he was not domiciled in New York when he was working for De Tomaso and "spent more time working in Connecticut than he did in New York." Dkt. 103

at 6-7. Plus, Berris points out, De Tomaso is headquartered in Connecticut. *Id.* at 8. So there's a factual dispute as to which state has "the greatest concern" as to this claim. The facts bearing on this question will be fleshed out in discovery, which is in full swing, so the Court declines to make a ruling based solely on Berris's complaint. For purposes of this motion, the Court will proceed on the assumption that Connecticut law may be applicable to Berris's wrongful-discharge claim.

### B. Berris need not pierce the corporate veil to hold Lui liable.

Lui next argues that the amended complaint "does not allege that Lui was acting in his individual capacity and fails to allege any of the 'very demanding' elements for piercing the corporate veil." Dkt. 99 at 7. But "[h]olding corporate owners personally liable under the doctrine of piercing the corporate veil is different than holding corporate officers and directors liable for torts that they committed or in which they participated." *In re A.N. Frieda Diamonds, Inc.*, 633 B.R. 190, 205 (S.D.N.Y. 2021). Connecticut law allows litigants to hold "a director or officer who . . . participates" in a tort individually liable, "even though liability may also attach to the corporation for the tort." *Ventres v. Goodspeed Airport, LLC*, 881 A.2d 937, 962 (Conn. 2005) (citation omitted). So Berris need not plead veil-piercing to sustain his claim against Lui. Instead, he must allege that Lui personally aided and abetted or conspired to cause Berris's wrongful discharge.

Berris does that. According to the complaint, Lui took on a quasi-managerial role at De Tomaso long before the SPAC transaction consummated. Dkt. 80 ¶ 109. As tensions between Berris, Lui, and Choi rose, Lui "demanded that Berris make no further claim to having any interest in the company and void any claims he might have in De Tomaso." *Id.* ¶ 126. If Berris didn't do so, Lui told Berris that "things would not end well" for him. *Id.* Lui threatened that "Choi and he would make false reports to the [SEC] to harm Berris's reputation." *Id.* Lui also emailed Berris a form resignation letter, telling Berris to "get it signed by tonight" and email it to Lui or Choi. *Id.* ¶ 121. Together, these allegations plausibly suggest that Lui was knee-deep in causing Berris's discharge.

### C. Aiding-and-abetting or conspiracy liability can attach to wrongful-discharge claim.

Genesis and Lui say that Berris can't "circumvent the requirement that a wrongful discharge claim can only be brought against an employer" by suing Genesis and Lui on an aiding-and-abetting or conspiracy theory. Dkt. 99 at 10. But they cite no case law to support this argument.

While neither side points to law specifically addressing this issue (they can try again on summary judgment), as a general matter, under Connecticut law, aiding-and-abetting liability can attach to any tort. *See Slicer v. Quigley*, 429 A.2d 855, 859 (Conn. 1980) ("[F]or harm resulting to a third person from the tortious conduct of another, a person is liable if he . . . knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other . . . ." (citation omitted)). The same goes for conspiracy liability. *See Macomber v. Travelers Prop. & Cas. Corp.*, 894 A.2d 240, 254-55 (Conn. 2006) ("[T]here must be an underlying tort for the viability of a civil conspiracy claim . . . ."). Genesis and Lui don't provide

any reason why wrongful discharge should be treated differently than other forms of tort liability under Connecticut law.

### D. Berris states a claim for aiding and abetting.

To hold a defendant liable for aiding and abetting a tort under Connecticut law, "(1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; [and] (3) the defendants must knowingly and substantially assist the principal violation." *Efthimiou v. Smith*, 846 A.2d 222, 226 (Conn. 2004) (citation omitted). Lui and Genesis say that the complaint contains no allegations regarding elements two and three. Dkt. 99 at 12-15.

The Court disagrees. Again, the complaint says that Lui took on an increasingly "active management role in the affairs of De Tomaso" in spring 2022. Dkt. 80 ¶ 109; *see also id.* ¶ 118 (explaining that "[a]s early as fall 2021" Lui began coordinating with De Tomaso's CFO "to change certain elements of the company's financial modeling"). During that time, Berris and Choi were butting heads because "Berris had raised concerns to Choi about Choi's false, material statements to customers, potential investors, and partners." *Id.* ¶ 113. In April and May 2022, Lui told Berris that Lui and Choi "would make false reports to the [SEC] to harm Berris's reputation." *Id.* ¶ 126. Lui also told Berris that if he did not walk away from the company, "things would not end well" for him. *Id.* In May 2022, Lui emailed Berris a form resignation letter, which he encouraged Berris to sign and "email to [Lui] and/or directly to [Choi]." *Id.* ¶ 121.

Drawing all reasonable inferences in Berris's favor, these facts plausibly allege that Lui was "generally aware" of what was going on and "substantially assist[ed]" in the commission of the tort. *Efthimiou*, 846 A.2d at 226 (citation omitted).

### E. Berris's conspiracy allegations suffice.

Aiding-and-abetting and conspiracy liability are closely related. "The primary distinction between civil conspiracy and aiding and abetting is that in the latter, unlike the former, the aider and abettor need not actually agree to bring about the tort." *Master-Halco, Inc. v. Scillia Dowling & Natarelli, LLC*, 739 F. Supp. 2d 109, 121 (D. Conn. 2010). Lui and Genesis argue that Berris fails to state a claim for conspiracy because the complaint contains no support for "the generic and repeated statement[]" that Lui and Genesis had an agreement or understanding with Choi and De Tomaso to carry out Berris's wrongful discharge. Dkt. 99 at 16.

To establish an agreement, however, it is "not necessary" to show that coconspirators "signed papers, shook hands, or uttered the words we have an agreement." *Am. Diamond Exch., Inc. v. Alpert*, 920 A.2d 357, 369 (Conn. App. Ct. 2007) (citation omitted). Instead, "[t]he requisite agreement or confederation may be inferred from proof of the separate acts of the individuals accused as coconspirators and from the circumstances surrounding the commission of these acts." *Id.* (citation omitted).

4

Again, drawing all reasonable inferences in Berris's favor, defendants' individual actions, coupled with the surrounding circumstances, plausibly support an agreement between Choi and Lui to force out Berris because he was raising concerns about the SPAC transaction. Both Lui and Choi had a vested interest in seeing the transaction through. Lui's statements to Berris that Lui and Choi would both make false reports to the SEC suggest that the two were working together to get Berris off their backs. And the email from Lui to Berris references Lui's conversation with Choi about Berris's termination. These allegations are sufficient to plausibly allege that there was an agreement between the defendants, so Berris's conspiracy claim survives.

### F. Berris's wrongful-discharge claim is not clearly time barred.

In reply, Genesis and Lui argue for the first time that Berris's wrongful-discharge claim is barred as a matter of law by the statute of limitations. Dkt. 104 at 3. Setting aside the fact that Genesis and Lui failed to raise this argument until their reply brief, *see Conn. Bar Ass'n v. United States*, 620 F.3d 81, 91 n.13 (2d Cir. 2010) ("Issues raised for the first time in a reply brief are generally deemed waived."), the Court is not convinced that the timeliness issue can be resolved on this motion.

"The lapse of a limitations period is an affirmative defense that a defendant must plead and prove." *Michael Grecco Prods., Inc. v. RADesign, Inc.*, 112 F.4th 144, 149 (2d Cir. 2024) (quoting *Staehr v. Hartford Fin. Servs. Grp.*, 547 F.3d 406, 425 (2d Cir. 2008)). Granting a motion to dismiss based on a statute-of-limitations defense is appropriate "only if 'it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law.'" *Id.* at 150 (quoting *Sewell v. Bernadin*, 795 F.3d 337, 339 (2d Cir. 2015)).

Here, it is not "clear from the face of the complaint" that Berris's claim is time barred; in fact, it's not even clear which statute of limitations applies. *Id.* (quoting *Sewell*, 795 F.3d at 339). (And notably, defendants De Tomaso and Choi did not raise a statute-of-limitations defense, so they seem to concede that the wrongful-discharge claim isn't clearly untimely based on the allegations in the complaint.) There is no dispute that Berris's claim is timely if it is subject to the general three-year statute of limitations that Connecticut courts apply to common-law wrongful-discharge claims. *See Chance v. Leno's Lawn Serv., LLC*, 2009 WL 3740645, at *2 (Conn. Super. Ct. Oct. 16, 2009) ("Under Connecticut law, the three-year statute of limitations . . . applies to a common-law cause of action in tort for wrongful discharge.").

Under Connecticut law, however, plaintiffs cannot bring a common-law wrongful-discharge claim if a statutory remedy is available to them. *See Burnham v. Karl & Gelb, P.C.*, 745 A.2d 178, 183 (Conn. 2000) ("The existence of [a] statutory remedy precludes the plaintiff from bringing a common-law wrongful discharge action based on an alleged violation of [that statute]."). Genesis and Lui argue that Berris's common-law wrongful-discharge claim is precluded by section 33-1336 of the Connecticut General Statutes, which prohibits publicly held Connecticut corporations from discharging whistleblowing employees. *See* Conn. Gen. Stat. Ann. § 33-1336(a). That statute

5

contains a one-year statute of limitations, which Genesis and Lui say applies here and bars Berris's wrongful-discharge claim. *Id.* § 33-1336(b).

But there's a threshold problem with this argument. De Tomaso was not a publicly held company when Berris was discharged, so it's not clear that Berris could have sued defendants under section 33-1336. *See* Dkt. 80 ¶¶ 121-23 (alleging that Berris was forced out of De Tomaso before the company went public via the fraudulent SPAC); *see also Chenarides v. Bestfoods Baking*, 2005 WL 1088983, at *4 (Conn. Super. Ct. Mar. 30, 2005) ("Section 33-1336 . . . protects employees who are discharged for either internal or external whistleblowing, but it does not directly apply to the present case because it only regulates publicly held corporations."). Neither party has addressed whether a plaintiff has a cause of action under section 33-1336 against a company that was privately held when the discharge occurred but later went public. The Court declines to resolve this issue without the benefit of briefing. If there's a real issue to address, the parties can pick it up on summary judgment.

## CONCLUSION

For these reasons, Genesis and Lui's motion to dismiss the amended complaint is granted as to Count II and denied as to Count VI of the amended complaint.

The Clerk of Court is respectfully directed to terminate Dkt. 97.

SO ORDERED.

Dated: October 30, 2024
New York, New York

ARUN SUBRAMANIAN
United States District Judge